[No. 7359-5-II.   Division Two.   December 12, 1985.]

THE STATE OF WASHINGTON, *Respondent*, v. DONALD
GENE LANGLAND, *Appellant*.

*Mark F. Baum,* for appellant (appointed counsel for appeal).

*Arthur D. Curtis, Prosecuting Attorney,* and *Roger A. Bennett, Deputy,* for respondent.

ALEXANDER, J.—The defendant, Donald Langland, appeals his conviction as a habitual criminal and the imposition of a suspended life sentence. We affirm.

Langland was charged with the crimes of burglary in the second degree and taking a motor vehicle without owner's permission alleged to have occurred in October 1977. Although he was then only 17 years of age, the juvenile court of Clark County declined jurisdiction, and he was tried as an adult in superior court. In December of that year he was convicted of the offenses, granted a deferred sentence, and jailed as a condition of his probation.

Langland was released from jail approximately 20 days later and shortly thereafter, February 23, 1978, he again committed the crime of taking a motor vehicle without owner's permission. He was then 18 years of age. In April 1978, the defendant was convicted of that offense and was sentenced to prison for it as well as the prior felonies, following revocation of his deferred sentence.

In January 1980, Langland secured his release from prison on parole. Again, after a short period of time he was charged in Clark County Superior Court with taking a motor vehicle without owner's permission and was convicted on March 26, 1980.

Two days later, a supplemental information was filed accusing Langland of being a habitual criminal, based on his criminal history recited above. On May 2, 1980, the defendant was adjudged to be a habitual criminal pursuant to the provisions of RCW 9.92.090. At that time, he was also found guilty of the offense of attempting to elude a

pursuing police vehicle.[1] The trial judge sentenced Langland to a term of life imprisonment under the habitual criminal act, but suspended the sentence for 20 years on certain conditions.[2] The trial judge imposed the maximum sentence of 5 years in prison for the crime of attempting to elude a pursuing police vehicle.

This appeal[3] presents two issues: Langland contends, first, that the trial court erred in adjudging him a habitual criminal because, according to the defendant, he did not have sufficient time to reform between convictions. The defendant further asserts that the life sentence constitutes "cruel punishment" in violation of article 1, section 14 of the Washington State Constitution.[4]

---

[1]The crime of attempting to elude a pursuing police vehicle was charged in the same information in which the defendant was charged with taking a motor vehicle without owner's permission. However, the conviction for that count of the information did not occur until after the March 1980 conviction on count 1 (taking a motor vehicle without owner's permission).

Although the prosecution did not seek a life sentence for the eluding a police officer charge, it would appear that under the holding in *State v. Ogle,* 3 Wn. App. 549, 475 P.2d 913 (1970), the prosecutor could have sought a life sentence. Once a person has been adjudged a habitual criminal, the status is fixed, and a life sentence is the appropriate sentence for all subsequent convictions. 3 Wn. App. at 551. However, this issue was not raised, and we therefore need not decide it.

[2]The judge suspended Langland's life sentence on the following conditions:
1. No further felonies;
2. No crimes against property;
3. No crimes of violence;
4. Be a good law abiding citizen.

[3]The defendant did not appeal his conviction as a habitual criminal within 30 days of May 2, 1980. In April 1983, a motion was filed in superior court to revoke the defendant's suspended sentence for alleged violations of the conditions of probation. The defendant then filed a notice of appeal in this court but we denied review because the appeal was filed late. Langland then sought discretionary review by the Washington Supreme Court, and that court granted defendant's motion and ordered this court to accept the late filing of defendant's appeal, apparently because the defendant had not been advised on May 2, 1980, of his right to appeal. *See* CrR 7.2(b). *See State v. Sweet,* 90 Wn.2d 282, 581 P.2d 579 (1978). The motion to revoke defendant's probation was never acted upon and, therefore, the suspended sentence was unaffected.

[4]The defendant has not claimed or argued that the sentence violates the

## HABITUAL CRIMINAL STATUS

The defendant's argument that the trial court erred in adjudging him a habitual criminal is without merit. The scope of a trial on habitual criminal charges is narrowly confined by RCW 9.92.090. Only two elements are required for a court to determine that a defendant is a habitual criminal. First, the defendant must have the requisite number of prior valid convictions, and second, the defendant must be identified as the person who is the subject of those convictions. *State v. Furth,* 5 Wn.2d 1, 104 P.2d 925 (1940); *State v. Jeter,* 19 Wn. App. 151, 574 P.2d 1193, *review denied,* 90 Wn.2d 1013 (1978).

▆ Here, there is no contention that these elements were not proved. Langland argues only that he had insufficient opportunity for reform between his convictions in 1977 and the subsequent conviction in 1978. While it may be argued that only a short period of time elapsed between convictions, the defendant had "an opportunity for reform." The statement that there must be an opportunity for reform means only that the act leading to the habitual criminal charge must have occurred since the prior conviction(s). In other words, a defendant will be found to be a habitual criminal if there was an opportunity, however brief, for a prior conviction to have had some deterrent effect. *Jeter,* 19 Wn. App. at 154. Only if the act leading to the habitual criminal charge was committed simultaneously with or prior to the previous conviction(s), can it be concluded that there has been no opportunity for reform. *State v. Jeter, supra.*[5]

Eighth Amendment to the United States Constitution which prohibits imposition of "cruel and unusual punishment."

[5]We are mindful of the fact that Langland was under the age of 18 at the time he received his first convictions. We know of no decision holding that this fact affects the validity of those convictions insofar as the habitual criminal statute is concerned. Further, we observe that Langland was very nearly 18 at the time of those convictions and, therefore, he had an opportunity, as an adult, to reform while on probation.

CRUEL PUNISHMENT

We are not persuaded that the suspension of the life sentence by the trial court violates the prohibition in the Washington State Constitution against infliction of "cruel punishment." The pertinent portion of the state constitution, article 1, section 14, reads as follows:

§ 14 Excessive bail, fines and punishments. Excessive bail shall not be required, excessive fines imposed, *nor cruel punishment inflicted.*

(Italics ours.)

Here the statute, RCW 9.92.090,[6] mandates a life sentence for persons such as the defendant who are found to be repetitious violators, although the sentence may be suspended. *State v. Bird,* 95 Wn.2d 83, 85, 622 P.2d 1262 (1980). A life sentence which is not suspended under the circumstances set forth in the habitual criminal statute does not constitute cruel and unusual punishment per se. *State v. Thomas,* 16 Wn. App. 1, 553 P.2d 1357 (1976).

■ Defendant has not directly contended that a "suspended" life sentence constitutes "cruel punishment." However, that argument is perhaps implied. As long as the sentence remains suspended, Langland is on probation and is not serving the life sentence. He will, of course, have to observe the specified conditions of probation for as long as 20 years, but these conditions cannot be considered cruel. Indeed, one might argue that the court showed leniency in suspending the life sentence. We know of no authority, and none has been cited, that a suspended life sentence is violative of article 1, section 14 of the Washington State Con-

---

[6]RCW 9.92.090 provides, in part, as follows:

"Every person convicted in this state of any crime of which fraud or intent to defraud is an element, or of petit larceny, or of any felony, who shall previously have been twice convicted, whether in this state or elsewhere, of any crime which under the laws of this state would amount to a felony, or who shall previously have been four times convicted, whether in this state or elsewhere, of petit larceny, or of any misdemeanor or gross misdemeanor of which fraud or intent to defraud is an element, shall be punished by imprisonment in the state penitentiary for life."

stitution.[7]

May we consider now whether or not the sentence is cruel if the suspended sentence is revoked? Defendant strenuously argues that it is not premature for us to consider the alleged cruelty of the life sentence, even though its imposition has been suspended. We disagree.

We observe that a person may not urge the unconstitutionality of a statute unless he is harmfully affected by the particular feature of the statute alleged to be unconstitutional. *State v. Lundquist,* 60 Wn.2d 397, 374 P.2d 246 (1962). The only feature of the sentence which can be said to infringe any interest peculiar to Langland is his probationary status. As we have indicated, this "status" does not constitute cruel punishment.

█ Several recent federal decisions hold that the issue of whether a sentence constitutes cruel and unusual punishment is not ripe for review, when the convicted offender has not been incarcerated, but has been placed on life parole. *United States v. Rea,* 532 F.2d 147 (9th Cir.), *cert. denied,* 429 U.S. 837, 50 L. Ed. 2d 104, 97 S. Ct. 107 (1976); *United States v. Walden,* 578 F.2d 966, 972 (3d Cir. 1978). We agree with the statement in *Walden* that "[i]mprisonment as a result of parole revocation is only speculation at this time and does not present a ripe question for decision." *Walden,* 578 F.2d at 972. *See also United States v. Bridges,* 760 F.2d 151, 154 (7th Cir. 1985); *Hinman v. United States,* 730 F.2d 649, 651 (11th Cir. 1984). In the event Langland should find, at some future time, that his suspended sentence is revoked and the life sentence imposed, we hold he can raise the constitutional issue of alleged "cruelty" at that time by timely appeal.[8] *See State*

---

[7]Several federal cases have held that there is nothing per se cruel and unusual about placing a convicted offender on life parole. *United States v. Rea,* 532 F.2d 147 (9th Cir.), *cert. denied,* 429 U.S. 837, 50 L. Ed. 2d 104, 97 S. Ct. 107 (1976); *United States v. Walden,* 578 F.2d 966, 972 (3d Cir. 1978).

[8]The State urges the additional proposition that the case is not properly before this court because the Board of Prison Terms and Paroles has not yet fixed

*v. LaRoque,* 16 Wn. App. 808, 560 P.2d 1149 (1977) (the court considered the cruel punishment issue on appeal from the revocation of the defendant's suspended sentence).

We affirm the defendant's conviction and the granting of a suspended life sentence.

REED, A.C.J., and PETRICH, J., concur.

the defendant's minimum term. It cites *State v. Hurst,* 5 Wn. App. 146, 486 P.2d 1136 (1971), *State v. Floyd,* 11 Wn. App. 1, 521 P.2d 1187 (1974), and *State v. Harp,* 13 Wn. App. 239, 534 P.2d 842 (1975). We note, however, the more recent case, *State v. Fain,* 94 Wn.2d 387, 617 P.2d 720 (1980), where it was determined that an unsuspended life sentence was cruel and unusual in the circumstances of that case, notwithstanding the possibility that the defendant might serve less than the full term because of his eligibility for parole. In this case, however, we are a step away from *Fain* since the defendant has not yet been sentenced to prison.