162 P.3d 1190 (2007)
STATE of Washington, Respondent,
v.
William Henry MOTTER, Appellant.
In re Personal Restraint Petition of William Henry Motter, Petitioner.
Nos. 34251-1-II, 35039-4-II.
Court of Appeals of Washington, Division 2.
July 24, 2007.
*1191 John A. Hays, Longview, WA, for Appellant.
Iv Motter, Shelton, WA, pro se.
Michael C. Kinnie, Arthur David Curtis, Clark County Prosecuting Atty, Vancouver, WA, for Respondent.

PART PUBLISHED OPINION
QUINN-BRINTNALL, J.
¶ 1 Around 10 o'clock at night, 71-year-old Dr. David Dixon responded to a burglar alarm at his medical office in Vancouver, Washington. Dixon initially thought it was a false alarm, but once inside he confronted William Motter standing behind an examining room door armed with a homemade *1192 weapon.[1] Motter rammed Dixon with the examining room door and a scuffle ensued.
¶ 2 Dixon's security service heard his cries for help through an audio feed and called the Vancouver police. A police K-9 unit responded and subsequently found Motter hiding in nearby blackberry brambles and arrested him. Dixon sustained minor injuries as a result of his altercation with Motter, including a broken fingernail and several bruises.
¶ 3 The State charged Motter with one count of first degree burglary premised on assault. RCW 9A.52.020(l)(b). After a short trial in which Motter exercised his right not to testify, a jury convicted him as charged. Motter appealed and filed a personal restraint petition (PRP) challenging this conviction.
¶ 4 We consolidated Motter's appeal and PRP. Here, we review: (1) Motter's community custody conditions; (2) a permissive inference jury instruction; (3) a no duty to retreat jury instruction; (4) the trial court's alleged failure to assess Motter's competency; (5) the effectiveness of Motter's counsel; and (6) alleged misconduct by the prosecution. In the published portion of this opinion, we affirm Motter's community custody conditions. But we analyze the remaining issues without publication because we resolve those issues by following well-established legal principles that have no precedential value. RCW 2.06.040; State v. Fitzpatrick, 5 Wash.App. 661, 669, 491 P.2d 262 (1971).

ANALYSIS
COMMUNITY CUSTODY
¶ 5 Motter challenges three of his community custody conditions: (1) a mandate that Motter undergo substance abuse treatment; (2) prohibition on Motter's possession or use of drug paraphernalia; and (3) a requirement that Motter notify his community corrections officer when he is prescribed a controlled substance or legend drug. A defendant may raise these claims for the first time on appeal. State v. Jones, 118 Wash. App. 199, 204, 76 P.3d 258 (2003). We affirm.[2]
¶ 6 We review a sentencing court's application of the community custody provisions of the Sentencing Reform Act de novo. State v. Pierson, 105 Wash.App. 160, 165, 18 P.3d 1154 (2001). And we review findings of fact that underlie the imposition of community custody for substantial evidence. See State v. Brockob, 159 Wash.2d 311, 343, 150 P.3d 59 (2006).
¶ 7 First, we note that a proper community custody condition must be authorized by the legislature because it is the legislature's sole province to fix legal punishments. State v. Pillatos, 159 Wash.2d 459, 469, 150 P.3d 1130 (2007). Motter wrote a letter to the court asking to receive mental health treatment. But a defendant's request does not give the court authority to impose a requested condition.
¶ 8 If an offender was convicted of a "violent offense," a sentencing court may impose community custody under former RCW 9.94A.715 (2003). The jury convicted Motter of first degree burglary, a class A felony. RCW 9A.52.020. Class A felonies are violent offenses. RCW 9.94A.030(50)(a)(i). Thus, former RCW 9.94A.715 authorized the trial court to impose community custody conditions.
¶ 9 Former RCW 9.94A.715 contains two provisions that are relevant to Motter's appeal. First, it authorizes a sentencing court to:
order the offender to participate in rehabilitative programs or otherwise perform affirmative conduct reasonably related to the circumstances of the offense, the offender's *1193 risk of reoffending, or the safety of the community.
Former RCW 9.94A.715(2)(a).[3]
¶ 10 Second, it authorizes a court to impose conditions that are listed in RCW 9.94A.700(4)-(5). Former RCW 9.94A.715(2)(a). RCW 9.94A.700(5) allows the court to order that:
(c) The offender shall participate in crime-related treatment or counseling services; [and]
. . . .
(e) The offender shall comply with any crime-related prohibitions.
A condition is crime-related if it directly relates to the circumstances of the crime. RCW 9.94A.030(13); State v. Llamas-Villa, 67 Wash.App. 448, 456, 836 P.2d 239 (1992). But subsection (e), relating to "crime-related prohibitions," does not allow a court to order affirmative conduct. RCW 9.94A.030(13).
A. REHABILITATIVE PROGRAMS
¶ 11 Motter first challenges the order that he participate in rehabilitative programs. The sentencing court ordered that Motter
enter into, cooperate with, fully attend and successfully complete all in-patient and outpatient phases of a . . . substance abuse . . . [and] anger management treatment program as established by the community corrections officer and/or the treatment facility.
Clerk's Papers (CP) at 149.
¶ 12 Motter argues that substance abuse is not a "crime-related treatment or counseling servic[e]" under RCW 9.94A.700(5)(c). But substantial evidence supports the finding of crime relation: (1) Motter admitted he used heroin that night; (2) Motter's attorney argued that "almost all of [Motter's] problems that are legal related revolve around his drug problems that he's had ongoing for quite some time"; and (3) the burglary of a doctor's office is often motivated by a desire to steal drugs. Report of Proceedings (RP) (Nov. 28, 2005) at 7. The trial court did not err when it found that substance abuse treatment and counseling was crime related.
¶ 13 Further, former RCW 9.94A.715 expressly authorizes the trial court to impose this condition when sentencing defendants such as Motter who have committed violent offenses. The trial court's order directs that Motter "participate in rehabilitative programs . . . reasonably related to the circumstances of the offense." Former RCW 9.94A.715(2)(a). The evidence outlined above substantially supports a finding that these rehabilitative programs relate reasonably to Motter's offense circumstances. The trial court did not err when it required that Motter comply with these conditions.
B. PROHIBITION ON PARAPHERNALIA POSSESSION AND USE
¶ 14 Second, Motter challenges the trial court's order that he:
shall not possess or use any paraphernalia that can be used for the ingestion or processing of controlled substances or that can be used to facilitate the sale or transfer of controlled substances including scales, pagers, cellular phones, police scanners, and hand held electronic scheduling and data storage devices.
CP at 149. This condition does not order affirmative conduct. And, as demonstrated above, Motter's crime was related to his substance abuse. Thus, forbidding Motter from possessing or using controlled substance paraphernalia is a "crime-related prohibition[]" authorized under RCW 9.94A.700(5)(e). Thus, this condition is valid.
¶ 15 Motter argues that "almost any item can be used for the ingestion of controlled substances, such as knives, soda cans, or other kitchen utensils." Br. of Appellant at 29. A community custody condition may be void for vagueness if it fails to define specifically the activity that it prohibits. State v. Riles, 86 Wash.App. 10, 17-18, 936 P.2d 11 (1997), aff'd, 135 Wash.2d 326, 957 P.2d 655 (1998). But Motter fails to cite to authority and his argument consists of one *1194 unhelpful sentence in the context of a complex constitutional legal doctrine.
¶ 16 Moreover, Motter's challenge is not ripe. In State v. Massey, 81 Wash.App. 198, 200, 913 P.2d 424 (1996), the defendant challenged a condition that he submit to searches. This court held that the judicial review was premature until the defendant had been subjected to a search he thought unreasonable. And in State v. Langland, 42 Wash.App. 287, 292-93, 711 P.2d 1039 (1985), we held that the question of a law's constitutionality is not ripe for review unless the challenger was harmed by the law's alleged error. Here, Motter claims that the court order could prohibit his possession of innocuous items. But Motter has not been harmed by this potential for error and this issue therefore is not ripe for our review. It is not reasonable to require a trial court to list every item that may possibly be misused to ingest or process controlled substances, items ranging from pop cans to coffee filters. Thus, we can review Motter's challenge only in context of an allegedly harmful application of this community custody condition. This argument is not properly before this court and we will not address it.
C. COURT-ORDERED AFFIRMATIVE CONDUCT
¶ 17 Last, the trial court ordered that Motter "shall notify his/her community corrections officer on the next working day when a controlled substance or legend drug has been medically prescribed." CP at 149. This order requires that Motter perform affirmative conduct. Thus, it is not a valid "crime-related prohibition[ ]" under RCW 9.94A.700(5)(e). See RCW 9.94A.030(13).
¶ 18 But this condition is authorized under former RCW 9.94A.715(2)(a) as "affirmative conduct reasonably related to the circumstances of the offense, the offender's risk of reoffending, or the safety of the community." This condition serves two purposes. First, it prohibits Motter from obtaining multiple prescriptions from different doctors in order to receive otherwise legal drugs in unlawful amounts. This rationale relates to Motter's risk of reoffending and the community's safety because Motter admits that his drug abuse led him to commit crimes. Second, this condition protects Motter from being found in violation of his community custody conditions for taking a lawful prescription drug. The Department of Corrections must know which drugs Motter takes lawfully in order to accurately assess his urinalysis tests. By reporting his prescription drug use, Motter is protected from punishment for the use of those drugs. Former RCW 9.94A.715(2)(a) authorizes this condition and so we affirm.[4]
¶ 19 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
I concur: HOUGHTON, C.J.
VAN DEREN, J. (concurring in part and dissenting in part).
¶ 47 I respectfully dissent only on the issue of whether a prohibition on the possession or *1195 use of cellular phones and hand held electronic scheduling and data storage devices is shown to be related to Motter's substance abuse and therefore is appropriately banned and whether the issue is ripe.
¶ 48 Here, the record does not demonstrate that Motter dealt or possessed drugs with the intent to transfer or sell them. He does have an admitted drug use problem. The trial court's order thus elevates ownership and use of cell phones and data storage devices by drug users to paraphernalia used in the street drug trade. While it has been demonstrated in numerous criminal prosecutions that drug dealers use cell phones and electronic scheduling and data storage devices. in their trade, the largest users and possessors of these devices are non-drug users. Indeed, recent statistics report that almost three-fourths of the American public own or use cell phones.[7] They are the sole telephone for approximately 26 million adults  some 11. percent of our households.[8] The number of cell phone subscribers in Washington doubled from 2,144,767 in 2000, to 4,418,314 by June of 2006.[9] Their multiple functions allow them to replace other devices that take greater space and are much more costly.[10] For those without a permanent address, they may be the only way for a community corrections officer to maintain regular, easy, and fast contact.
¶ 49 I disagree with the majority that Motter has not demonstrated immediate harm from the trial court's restrictions and that the matter is not ripe. The majority states that "Motter claims that the court order could prohibit his possession of innocuous items" and reasons that "Motter has not been harmed by this potential for error and this issue is not ripe for our review." Majority at 1194. The majority partially relies on State v. Massey, 81 Wash.App. 198, 913 P.2d 424 (1996). In Massey, the defendant challenged a condition that he submit to searches upon reasonable suspicion versus reasonable cause. Massey, 81 Wash.App. at 199-200, 913 P.2d 424. The Massey court held that judicial review was premature until the defendant had actually been subjected to a search. Massey, 81 Wash.App. at 200, 913 P.2d 424. But Massey may never be subjected to a search, whereas Motter will be continuously subjected to the restriction on cell phones. Apparently the majority believes that in order to challenge these prohibitions, Motter must violate the order by possessing or using a cell phone or other device and face punishment before he can challenge the breadth of the order. But the order clearly is an immediate restriction on Motter's ability to own (or even use another person's) cell phones or electronic data storage devices.
¶ 50 I would hold that, unless the record shows that Motter was selling or obtaining drugs by use of a cell phone or other electronic device, this restriction is not valid and should be vacated.
NOTES
[1] Motter's weapon was rocks wrapped with electrical tape.
[2] The State concedes that the sentencing court erred when it imposed alcohol-related conditions because no evidence supported the condition. But we reject the concession because the sentencing court did not impose any alcohol-related conditions. The State also replies that Motter was correctly given conditions relating to his mental health. But Motter received no mental health conditions.
[3] The parties did not address the impact of this provision, but we may affirm on any ground established by the law and the record. State v. Villarreal, 97 Wash.App. 636, 643, 984 P.2d 1064 (1999), review denied, 140 Wash.2d 1008, 999 P.2d 1261 (2000).
[4] At oral argument, both parties expressed concern that the judgment and sentencing forms used in Clark County cause a great deal of confusion and are resulting in an unnecessarily high number of reversals on appeal. The parties acknowledged that it is not proper for this court to issue advisory opinions, but urged us to publish an opinion that may serve as guidance in crafting appropriate forms.

We recognize that the form used in this case is a landmine of potential errors. For instance, it is unclear whether the sentencing court intended to check the box finding that Motter had a chemical dependency, particularly given that Motter admitted that he was addicted to drugs and that his addiction motivated him to commit crimes. As this finding is located on page two of the form, while the related community custody conditions begin on page six, it seems all too likely that a sentencing court would overlook the relationship between this finding and its authority to sentence a defendant to affirmative conduct under RCW 9.94A.607.
Some counties organize the community custody conditions and related findings according to the specific grant of legal authority. For instance, conditions that require a finding of "crime-relation" are grouped together, as are conditions that are always given unless waived by the court under RCW 9.94A.700(4). In addition, as a reminder or a check on the exercise of judicial sentencing authority, some counties cite the specific statutory authority under which the court imposes each condition. These procedures appear to minimize unintentional sentencing errors such as those alleged in this case.
[7] Annual Report and Analysis of Competitive Market Conditions With Respect to Commercial Mobile Services, FCC 2006-142 (Sept. 26, 2006) (statement of Kevin J. Martin, Chairman, Federal Communications Commission (FCC)) ("Approximately 28 Million additional wireless subscribers signed up. in 2005, bringing the total to 213 million subscribers and increasing the nationwide penetration rate to 71 percent."), available at http://wireless.fcc.gov/cmrsreports.html.
[8] Stephen J. Blumberg & Julian V. Luke, Wireless substitution: Early release of estimates based on data from the National Health Interview Survey, July-December 2006. National Center for Health Statistics, at 2 & Table 1, (May 14, 2007), available at http://www.cdc.gov/nchs/nhis.htm.
[9] Trends in Telephone Service, FCC's Wireline Competition Bureau, Industry Analysis and Technology Division, at 11-5 (February 2007), available at http://www.fcc.gov/wcb/iatd/trends.html.
[10] The recently released iPhone is an example of such a multi-function electronic device.