IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 30242-3-III |
| | ) | Consolidated with |
| Respondent, | ) | No. 30243-1-III |
| | ) | |
| v. | ) | |
| | ) | |
| URIEL PONCE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

BROWN, J. — Uriel Ponce[1] appeals his felony harassment and witness tampering convictions, contending we must reverse both for insufficient evidence. We affirm his felony harassment conviction, but reverse his witness tampering conviction for insufficient evidence. Additionally we review, and reject, his claims surrounding the trial court's late filing of written CrR 3.5 factual findings and legal conclusions.

FACTS

Considering Uriel's evidence sufficiency challenge, we present the facts in the light most favorable to the State. *See State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560

---

[1] To avoid confusing appellant with his brother, we address Uriel Ponce as "Uriel" and José Ponce as "José." We intend no disrespect.

(1979)). Antonia Ponce and her son, José Ponce, each worked at a Taco Bell in Pasco. The store manager, Freddy Chavez, eventually fired José and fired Ms. Ponce four or five months later. Ms. Ponce sued Taco Bell for wrongful termination. During her employment, Mr. Chavez periodically interacted with Ms. Ponce's sons, including Uriel, and became familiar with their voices.

On January 10, 2011, Mr. Chavez answered a telephone call at work. The caller, who was male, requested Mr. Chavez's name. When Mr. Chavez responded, the caller spoke profanities, saying Mr. Chavez "was a b***h" because he "talked s**t to women." Report of Proceedings (RP) at 106. Then, the caller said he was going to "beat" and "kill" Mr. Chavez, telling him to "come outside" upon the caller's arrival. RP at 106. Mr. Chavez hung up the telephone and reported the conversation to law enforcement about five minutes later, upon a coworker's suggestion.

Based on what the caller said, Mr. Chavez thought there was a possibility the caller would carry out his threat. Because the threat seemed related to Ms. Ponce's lawsuit against Taco Bell and the caller sounded like one of her sons, Mr. Chavez became concerned for his and his family's safety. Thus, Mr. Chavez dialed *69 from the Taco Bell line, wrote down the last telephone number to call in, and gave it to law enforcement, who determined it belonged to Uriel's cellular phone. José had no access to Uriel's cellular phone at the time.

The State charged Uriel with felony harassment, witness tampering, and witness intimidation. Uriel did not ask José if he was involved in the criminal charges or pending

2

trial. But Uriel's girl friend, Kelsey Cavazos, wrote a confession on behalf of José, who

signed it upon Uriel's prompting. The confession states,

> I Jose Ponce admit guilt for threatening Freddy Chavez, the charge for
> which my brother Uriel Ponce was charged for. I was angry with my
> brother. We had, had an altercation, I had stolen his phone, and made a
> phone call to Taco Bell. I asked Freddy if they accepted Visa, then
> proceeded to threaten him. I was angry because Freddy had fired me and
> my mom, and because of the resulting lawsuit my mom had with Taco
> Bell. I knew the cops would go for my brother because of his criminal
> record. I knew the cops would take him, no questioning, but did not think
> of the reprocusisions [sic] my brother faced. All this happened on the day
> of 1.10.11 at around between 12:45 pm – 1:00pm.

x <u>*José Ponce*</u>

Ex. 5.

José signed the confession "[o]ut of fear" for his safety because he thought Uriel

"would do something to [him] if [he] didn't." RP at 214, 221. But José never threatened

Mr. Chavez. Uriel later admitted to Ms. Ponce that he, not José, made the telephone

call to Taco Bell. Uriel told Ms. Ponce he convinced José to sign the confession

because he was a juvenile and would receive a less severe sentence than Uriel. About

a month after signing it, José recanted the confession in a meeting with a prosecutor

and detective.

Following a CrR 3.5 suppression hearing, the trial court ruled orally to admit

certain statements Uriel gave law enforcement during arrest and interrogation. But the

trial court did not enter written CrR 3.5 factual findings and legal conclusions.

3

Uriel did not testify at trial. A jury found him guilty of felony harassment and witness tampering but acquitted him of witness intimidation. He appealed each conviction separately. This court consolidated the two appeals.

In his second opening brief, Uriel requested remand for the trial court to enter written CrR 3.5 factual findings and legal conclusions. The trial court did so preemptively about two months later. The State then supplemented the clerk's papers and argued in its second responsive brief that the belated entry is harmless error because Uriel cannot show it prejudiced him. He did not file a reply brief.

## ANALYSIS

### A. Evidence Sufficiency

The issue is whether sufficient evidence supports Uriel's felony harassment and witness tampering convictions.[2] He contends we must reverse both convictions because the State failed to prove certain elements beyond a reasonable doubt.

The Fourteenth Amendment Due Process Clause requires the State to prove all essential elements of a charged crime beyond a reasonable doubt. U.S. CONST. amend. XIV, § 1; *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). And, "The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." *Burks v. United States*, 437 U.S. 1, 11, 98 S. Ct. 2141,

---

[2] At the close of evidence, Uriel moved unsuccessfully for either dismissal or a directed verdict based on insufficient evidence to prove witness tampering. We review the denial of Uriel's motion de novo, performing the same function as the trial court. *See State v. Longshore*, 141 Wn.2d 414, 420, 5 P.3d 1256 (2000); *State v. Jackson*, 82 Wn. App. 594, 607-08, 918 P.2d 945 (1996).

57 L. Ed. 2d 1 (1978) (construing U.S. CONST. amend. V). Evidence is sufficient to support a guilty finding if, "'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Green*, 94 Wn.2d at 221 (emphasis omitted) (quoting *Jackson*, 443 U.S. at 319). An evidence sufficiency challenge "admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We defer to the jury's assessment of witness credibility and evidence weight or persuasiveness. *State v. Carver*, 113 Wn.2d 591, 604, 781 P.2d 1308, 789 P.2d 306 (1989).

First, Uriel challenges his felony harassment conviction. A defendant is guilty of harassment if, without lawful authority, he or she "knowingly threatens . . . [t]o cause bodily injury immediately or in the future to the person threatened or to any other person," and "by words or conduct places the person threatened in reasonable fear that the threat will be carried out." RCW 9A.46.020(1)(a)(i), (b). This form of harassment is a class C felony if the defendant "threaten[s] to kill the person threatened or any other person." Former RCW 9A.46.020(2)(b)(ii) (2003).

Uriel contends insufficient evidence shows he, by words or conduct, placed Mr. Chavez in reasonable fear Uriel would fulfill his threat to kill. We disagree because Mr. Chavez testified he thought, based on what the caller said, a possibility existed the caller would carry out his threat. Mr. Chavez recounted he became concerned for his and his family's safety because the threat seemed related to Ms. Ponce's lawsuit against Taco Bell and the caller sounded like one of her sons. Thus, a rational jury

5

could infer the caller's words caused Mr. Chavez to reasonably fear the caller would carry out his threat. And, Ms. Ponce testified Uriel admitted he, not José, made the call to Taco Bell. Other witnesses confirmed the call came from Uriel's cellular phone, to which José had no access at the time. Viewing the evidence in the light most favorable to the State, a rational jury could find beyond a reasonable doubt that Uriel's words placed Mr. Chavez in reasonable fear Uriel would fulfill his threat to kill. Therefore, we affirm Uriel's felony harassment conviction.

Second, Uriel challenges his witness tampering conviction. A defendant is guilty of witness tampering if he or she "attempts to induce a witness or person he or she has reason to believe is about to be called as a witness in any official proceeding" to "[t]estify falsely," "withhold any testimony," or "[a]bsent himself or herself from such proceedings." RCW 9A.72.120(1)(a)-(b). Additionally, a defendant may, by statute, be guilty of witness tampering with respect to "a person whom he or she has reason to believe may have information relevant to a criminal investigation." RCW 9A.72.120(1). But the trial court omitted this element from the jury instructions without objection. Therefore, the omission is the law of the case. *See State v. Hickman*, 135 Wn.2d 97, 102, 954 P.2d 900 (1998). While the State attempts to fill this void by applying the jury instruction defining a "current or prospective witness," the definition applies solely to witness intimidation, not witness tampering. 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 115.53 note on use at 439 (3d ed. 2008).

Moreover, Uriel aptly contends insufficient evidence shows he knew José was a witness or had reason to believe he was about to be called as such in Uriel's criminal

6

trial. Under RCW 9A.72.120(1)'s applicable language, "The accused must know that the person approached is a witness, or . . . have reason to believe that he is about to be called as such." *State v. Stroh*, 91 Wn.2d 580, 583, 588 P.2d 1182 (1979); *see State v. Rempel*, 53 Wn. App. 799, 805, 770 P.2d 1058 (1989), *rev'd on other grounds*, 114 Wn.2d 77 (1990). While the State apparently identified José as a potential witness before Uriel prompted him to sign the confession, no testimony or exhibit disclosed this fact. José recounted Uriel did not ask him if he was involved in the criminal charges or pending trial. And, Uriel did not testify regarding his knowledge. A rational jury would lack evidence to infer Uriel knew José was a witness or had reason to believe he was about to be called as such in Uriel's criminal trial. Viewing the evidence in the light most favorable to the State, a rational jury could not find this essential element beyond a reasonable doubt. Therefore, we reverse Uriel's witness tampering conviction and remand for the trial court to dismiss the charge.

## B. Written CrR 3.5 Record

The issue is whether the trial court reversibly erred by failing to enter written CrR 3.5 factual findings and legal conclusions until after Uriel filed his second opening brief with this court. His initial request for remand is now moot because we can no longer provide such relief. *See In re Det. of Cross*, 99 Wn.2d 373, 376-77, 662 P.2d 828 (1983). Thus, we instead consider the State's argument that reversal is unwarranted because the belated entry is harmless error.

Following a CrR 3.5 suppression hearing, a trial court "shall set forth in writing: (1) the undisputed facts; (2) the disputed facts; (3) conclusions as to the disputed facts;

7

and (4) conclusion as to whether the statement is admissible and the reasons therefor."

CrR 3.5(c). A trial court's belated entry of written CrR 3.5 factual findings and legal

conclusions is harmless error unless a party shows it prejudiced him or her. *State v.*

*Eaton*, 82 Wn. App. 723, 727, 919 P.2d 116 (1996); *see State v. Moore*, 61 Wn.2d 165,

175, 377 P.2d 456 (1963).

Here, the trial court's later written decision is consistent with its prior oral ruling,

which was itself sufficient to permit meaningful appellate review. And, the trial court

could not have tailored its later written decision to the issues presented on appeal

because Uriel has not challenged admission of his statements to law enforcement.

Therefore, the belated entry is harmless error because Uriel cannot show it prejudiced

him.

Affirmed in part. Reversed in part, and remanded for dismissal of the witness

tampering charge.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Brown, J.

WE CONCUR:

_____
Korsmo, C.J.

_____
Siddoway, J.

8