[No. 15942–9–I.   Division One.   January 26, 1987.]

THE STATE OF WASHINGTON, *Respondent*, v. GRANT R.
MARSHALL, *Appellant*.

*Helen A. Anderson* of *Washington Appellate Defender
Association,* for appellant.

*Seth R. Dawson, Prosecuting Attorney,* and *Seth Aaron
Fine, Deputy,* for respondent.

PEKELIS, J.—Grant R. Marshall appeals from a convic-
tion for second degree rape. He maintains that a statement
he made prior to his formal arrest was admitted into evi-
dence in violation of his *Miranda* rights. We affirm the
conviction.

# I

On May 12, 1984, Officer Casey Zinter of the Lynnwood Police Department was on patrol when he received a radio report of a suspicious person in the area. This person was described as a white male in his early twenties, approximately 6 feet tall, with brown hair, wearing blue jeans and a dark tan, waist–length coat. He was reported to have been knocking on the door of apartment J–9 at the Whispering Cedars apartment complex, and was said to be a suspect in an ongoing rape investigation.

A few minutes later, Zinter saw a suspect who fit the description about three blocks from the Whispering Cedars. Zinter advised the suspect that he was being detained for an investigatory stop, and asked him whether he had been at the Whispering Cedars knocking on the door of apartment J–9. The suspect said that he had. He also said that he had met someone on a bus who looked exactly like him, and who told him that the girl in J–9 was a prostitute. The suspect said he had gone there to see her.

At Zinter's request, the suspect produced his driver's license, which identified him as Grant Russell Marshall. This information was communicated by radio to Detective Brian Burkhalter, who was handling the rape investigation. Burkhalter had previously interviewed the rape victim, who had seen the rapist's driver's license and recalled that his last name was Marshall and that his middle name was Russell. Based all on the information available to him, Burkhalter concluded that there was probable cause for an arrest, and so informed Zinter. Marshall was then arrested and charged with second degree rape.

Before trial, a hearing was held pursuant to CrR 3.5 to determine the admissibility of Marshall's prearrest statement.[1] The trial court ruled that the statement was admissible, finding (1) that it was made pursuant to an appropriate investigatory stop, (2) that there was no prob-

---

[1]At this hearing, defense counsel sought to suppress other statements as well, but none of these are at issue on appeal.

able cause for an arrest at the time the statement was made, and (3) that Marshall was not "in custody" for purposes of *Miranda*. Marshall's statement was subsequently introduced into evidence at trial.

Marshall was found guilty as charged. On appeal, he argues that the court should have suppressed the statement that he made to Officer Zinter because it was the product of a custodial interrogation which was not preceded by *Miranda* warnings. The State contends that the statement was made in the course of an appropriate investigatory stop, and that *Miranda* warnings were not required because Marshall was not yet "in custody."

## II

The prosecution may not use statements stemming from the custodial interrogation of a defendant unless the defendant is first informed of his constitutional rights. *Miranda v. Arizona*, 384 U.S. 436, 444, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966). The purpose of the *Miranda* rule is to protect the constitutional privilege against compelled self–incrimination from the "coercive pressures that can be brought to bear upon a suspect in the context of custodial interrogation." *Berkemer v. McCarty*, 468 U.S. 420, 428, 82 L. Ed. 2d 317, 104 S. Ct. 3138 (1984).

In *Miranda*, "custodial interrogation" was defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. More recently, however, the Supreme Court has recognized that there are some forms of questioning which do significantly curtail a suspect's freedom of action, but which nonetheless do not exert upon him "pressures that sufficiently impair his free exercise of his privilege against self–incrimination to require that he be warned of his constitutional rights." *Berkemer*, 468 U.S. at 436–37, 442. Consequently, it is now settled that detention becomes "custodial," and *Miranda* rights attach, only when a suspect's freedom of action is curtailed to a "'degree associated

with formal arrest.'" *Berkemer,* 468 U.S. at 440 (quoting *California v. Beheler,* 463 U.S. 1121, 1125, 77 L. Ed. 2d 1275, 103 S. Ct. 3517 (1983) (per curiam)).

A custodial interrogation must be distinguished from an investigatory, or "*Terry,*" stop, which, because of its comparatively nonthreatening nature, is not subject to the dictates of *Miranda. See Berkemer,* 468 U.S. at 440; *State v. Bockman,* 37 Wn. App. 474, 479–80, 682 P.2d 925, *review denied,* 102 Wn.2d 1002 (1984); *State v. Sinclair,* 11 Wn. App. 523, 528, 523 P.2d 1209 (1974). The *Terry* standard permits a "'brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information'". *State v. Williams,* 102 Wn.2d 733, 737, 689 P.2d 1065 (1984) (quoting *Adams v. Williams,* 407 U.S. 143, 146, 32 L. Ed. 2d 612, 92 S. Ct. 1921 (1972)). The suspect may be asked to identify himself and to explain his activities without the necessity of first giving *Miranda* warnings. *See Bockman,* 37 Wn. App. at 479–80; *Sinclair,* 11 Wn. App. at 528.

Analyzed within the framework of *Williams,* 102 Wn.2d at 739–40, the facts of this case clearly indicate that Marshall's statement was made in the course of an appropriate investigatory stop. First, Officer Zinter's initial interference with Marshall's freedom of movement was justified by the "specific and articulable facts" contained in the radio report.[2] *Williams,* 102 Wn.2d at 739 (quoting *Terry v. Ohio,* 392 U.S. 1, 21, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)). Second, the detention and questioning were "reasonably related *in scope*" to the circumstances justifying the initial interference. *Williams,* 102 Wn.2d at 739. The only question asked of Marshall was directly related to the

---

[2]We do not accept Marshall's contention that Zinter had probable cause to arrest him from the moment he was detained. In any case, this has no bearing on the issue of whether Marshall was "in custody," since the purpose of the *Miranda* rule has little to do with the strength of an interrogating officer's suspicions. *Berkemer,* 468 U.S. at 435 n.22; *see also State v. Harris,* 106 Wn.2d 784, 789–90, 725 P.2d 975 (1986) (*Berkemer* test modifies probable cause standard of *State v. Dictado,* 102 Wn.2d 277, 687 P.2d 172 (1984)).

purpose of the stop. *Cf. Williams*, 102 Wn.2d at 740. The amount of intrusion was minimal: Zinter did not draw his gun, and Marshall was neither searched, handcuffed, nor secluded in the patrol car until his identity had been confirmed and he was placed under formal arrest. *Cf. Williams*, 102 Wn.2d at 740. Finally, the length of time involved was minimal: the record reflects that prior to his formal arrest, Marshall was detained for only a few moments while his identity was checked over the radio. *Cf. Williams*, 102 Wn.2d at 741.

In short, there is no evidence in the record to suggest that Marshall, at the time he made his statement, was subjected to the sort of "coercive pressures" associated with a formal arrest. We conclude, therefore, that Marshall was not "in custody" for purposes of *Miranda*, and that his statement was admissible.

Affirmed.

RINGOLD, A.C.J., and WILLIAMS, J., concur.