192 P.3d 937 (2008)
STATE of Washington, Respondent,
v.
Michael Vasiliy KOLESNIK aka Nichael M. Kolesnik, Appellant.
No. 35837-9-II.
Court of Appeals of Washington, Division 2.
September 16, 2008.
*940 John A. Hays, Attorney at Law, Longview, WA, for Appellant.
Michael C. Kinnie, Attorney at Law, Vancouver, WA, for Respondent.
QUINN-BRINTNALL, J.
¶ 1 Michael Vasiliy Kolesnik[1] appeals his conviction for first degree assault and his exceptional sentence of 240 months. In his appellate brief and statement of additional grounds[2] (SAG), Kolesnik argues that (1) his trial counsel was ineffective for failing to have him evaluated by a psychiatrist in support *941 of his diminished capacity defense, and for failing to object to propensity evidence; (2) the trial court's exceptional sentence was unlawful, clearly excessive, and contained unlawful community custody conditions; (3) the police unlawfully detained him at the scene; (4) the police failed to advise him of his Miranda[3] rights; (5) the State's expert improperly referenced his criminal history in testimony. Kolesnik's arguments lack merit. We affirm.

FACTS
¶ 2 On December 13, 2005, Kolesnik approached Robert Stover, who was standing by his pick-up truck outside a shopping center in Vancouver, Washington. Kolesnik's bizarre and erratic behavior alarmed Stover. Concerned that Kolesnik was under the influence of drugs and might harm someone, Stover called 911.
¶ 3 Corporal Greg Zimmerman of the Vancouver Police Department responded to the 911 call. Zimmerman was in uniform and driving a marked patrol vehicle when he contacted Kolesnik outside the shopping center. Although Kolesnik matched the caller's description of a "suspicious person" loitering in front of the shopping center and demonstrating bizarre behavior, Zimmerman did not notice that Kolesnik was acting in an erratic manner at that time. 2 Report of Proceedings (RP) at 50. Zimmerman parked his patrol vehicle, approached Kolesnik, and asked to speak with him.
¶ 4 Corporal Zimmerman asked Kolesnik for his identification. Kolesnik replied that he did not have his identification with him. Because the caller had indicated that Kolesnik had been displaying erratic behavior, Zimmerman decided to frisk Kolesnik for weapons before talking with him further and instructed him to turn around. Kolesnik turned and ran from the scene.
¶ 5 After a few steps, Kolesnik slipped and fell to the ground. Kolesnik resisted Corporal Zimmerman's attempts to restrain him and a struggle ensued. As Zimmerman tried to handcuff Kolesnik, he noticed that Kolesnik was holding a long, slender metal object. Kolesnik hit Zimmerman in the head with the metal object several times. Additional officers responded to assist Zimmerman.
¶ 6 Responding officers asked Kolesnik his name, whether and what kind of drugs he had used that morning, and whether he needed medical attention. In response to these questions, Kolesnik provided the name "Vasiliy Davidenko" and stated that he did not need medical attention. 2 RP at 25. Kolesnik also made several statements containing numerous expletives, referenced prior drug use, and made hostile assertions to police officers. The police transported Kolesnik to the police station where they advised him of his Miranda[4] rights.
¶ 7 Corporal Zimmerman received medical treatment for several stab wounds and abrasions to his head. One stab wound was within a centimeter of Zimmerman's temporal artery, and another penetrated an inch into his ear canal. According to the treating physician, Zimmerman's wounds were consistent with injuries inflicted by a screwdriver. Officers found a screwdriver at the scene.
¶ 8 The State charged Kolesnik with one count of attempted second degree murder and, in the alternative, one count of first degree assault. Both charges included a deadly weapon enhancement. The State later amended the information to include the law enforcement officer enhancement language of former RCW 9.94A.535(3)(v) (2005).[5] Kolesnik asserted defenses of diminished capacity and self-defense.
¶ 9 The trial court entered an order for a competency evaluation before trial.[6] The *942 evaluators found Kolesnik competent and reported that he did not exhibit signs of diminished capacity or insanity at the time of the incident. Based on this report, Kolesnik's trial counsel stipulated to competency.
¶ 10 At a CrR 3.5 hearing, Kolesnik moved to suppress statements he made to police immediately following his altercation with Corporal Zimmerman. The trial court ruled that Kolesnik was in custody at the scene and that his voluntary and spontaneous statements were admissible, but it excluded statements Kolesnik made at the scene in response to direct police questioning.
¶ 11 At trial, Dr. Margaret Dean testified that she interviewed Kolesnik in June 2006. According to Dean's testimony, Kolesnik suffered from several substance abuse issues, an amphetamine-induced psychotic disorder in remission, as well as antisocial personality disorder. Dean explained that antisocial personality disorder is a diagnosis common to individuals who exhibit a pattern of being inconsiderate of the rights and safety of others, harming others, feeling no remorse for their actions, as well as individuals who have difficulty following the law. In reaching her conclusion, Dean said one of the sources she relied on was Kolesnik's criminal history.
¶ 12 Kolesnik's trial counsel objected to any reference of Kolesnik's prior criminal history. Kolesnik's trial counsel clarified that he did not object to most of Dr. Dean's testimony because it supported his client's diminished capacity defense, but he sought to exclude any reference to Kolesnik's criminal history. Kolesnik stated on the record that he agreed with his trial counsel's strategy.
¶ 13 The trial court sustained defense counsel's objection and instructed the jury to disregard any reference-to Kolesnik's criminal history. Dr. Dean concluded that Kolesnik may have experienced methamphetamine-induced psychotic symptoms at the time of the incident, but she opined that he was still capable of acting intentionally and was likely aware that Corporal Zimmerman was a police officer.
¶ 14 In addition to the charged offenses (attempted second degree murder and first degree assault), the trial court instructed the jury on the lesser included offenses of second and third degree assault. The jury found Kolesnik guilty of first degree assault, and found that Kolesnik (1) had used a deadly weapon in the commission of the crime and (2) knew that his victim was a law enforcement officer engaged in his official duties at the time he assaulted him.
¶ 15 Based on Kolesnik's offender score,[7] the standard range for the crime of first degree assault was 111 to 147 months confinement. With a 24-month deadly weapon enhancement, the standard range increased to 135 to 171 months.[8] Based on the jury's finding of the aggravating factor that Kolesnik knew the victim was a police officer engaged in official police duties at the time of the offense, the trial court found that substantial and compelling reasons existed justifying an exceptional sentence above the standard range for Count I and imposed an exceptional sentence of 240 months confinement. In addition, the trial court imposed 36 to 48 months community custody with related conditions.[9] Kolesnik timely appeals.

*943 ANALYSIS

INEFFECTIVE ASSISTANCE OF COUNSEL
¶ 16 Kolesnik first contends that he received ineffective assistance of counsel. The federal and state constitutions guarantee a defendant the right to effective assistance of counsel. U.S. CONST. amend VI; WASH. CONST. art. I, § 22; Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail on an ineffective assistance of counsel claim, Kolesnik must show that (1) his trial counsel's performance was deficient and (2) the deficiency prejudiced him. Strickland, 466 U.S. at 687, 104 S.Ct. 2052. Deficient performance is that which falls below an objective standard of reasonableness. Strickland, 466 U.S. at 688, 104 S.Ct. 2052. To demonstrate prejudice, he must show that his trial counsel's performance was so inadequate that there is a reasonable probability that the result at trial would have been different. Strickland, 466 U.S. at 694, 104 S.Ct. 2052. A failure to prove either element defeats his claim. Strickland, 466 U.S. at 700, 104 S.Ct. 2052.
¶ 17 Furthermore, we review trial counsel's performance in the context of the entire record below. State v. McFarland, 127 Wash.2d 322, 335, 899 P.2d 1251 (1995). And we strongly presume that counsel's representation was not deficient. McFarland, 127 Wash.2d at 335, 899 P.2d 1251. When the challenged action is a legitimate trial strategy, counsel is not ineffective. State v. Garrett, 124 Wash.2d 504, 520, 881 P.2d 185 (1994). Because the decision not to object constituted a tactical and expressly acknowledged trial strategy in support of Kolesnik's diminished capacity defense, Kolesnik's trial counsel was not ineffective.

FAILURE TO OBJECT
¶ 18 Kolesnik argues that his trial counsel was ineffective because he failed to object to Dr. Dean's testimony that Kolesnik (1) suffered from antisocial personality disorder and (2) was the type of person who repeatedly harms others and feels no remorse for his actions. Specifically, Kolesnik argues that this testimony had little probative value and permitted the jury to convict Kolesnik based on his propensity to commit first degree assault. Because the record shows that trial counsel's decision not to object was part of a legitimate trial strategy that supported Kolesnik's diminished capacity defense, Kolesnik's trial counsel was not deficient.
¶ 19 There is no claim for ineffective assistance of counsel when the challenged action goes to a legitimate trial strategy or tactic. Garrett, 124 Wash.2d at 520, 881 P.2d 185. The decision whether to object is a classic example of trial tactics, and only in egregious circumstances will the failure to object constitute ineffective assistance of counsel. See, e.g., State v. Madison, 53 Wash.App. 754, 763, 770 P.2d 662 (citing Strickland, 466 U.S. 668, 104 S.Ct. 2052; State v. Ermert, 94 Wash.2d 839, 621 P.2d 121 (1980)), review denied, 113 Wash.2d 1002, 777 P.2d 1050 (1989).
¶ 20 Here, Kolesnik's trial counsel relied on Dr. Dean's testimony regarding Kolesnik's mental health and, except for successfully moving to exclude references to Kolesnik's criminal history, did not object. Kolesnik expressly told the trial court that he agreed with his trial counsel's strategy. Trial counsel adhered to an agreed trial strategy in deciding not to object to Dean's diagnosis and characterization of Kolesnik's antisocial personality disorder and his representation was not deficient; we do not, therefore, address the issue of prejudice.

EXCEPTIONAL SENTENCE
¶ 21 Kolesnik contends that his exceptional sentence is improper because (1) the legislature did not intend for the law enforcement enhancement to apply to first degree assault and (2) it is clearly excessive. Initially, we note that our Supreme Court's decision in Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), does not alter our review of the length of an exceptional sentence imposed on a jury's finding that the crime was aggravated by facts found beyond a reasonable doubt. Blakely held that a jury, not a judge, must find any aggravating fact that increases the penalty of a crime beyond the prescribed standard range beyond a reasonable doubt. *944 542 U.S. at 301, 124 S.Ct. 2531 (quoting Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)). But Blakely did not alter the law governing review of the length of an exceptional sentence based on properly adjudicated factors. See 542 U.S. at 308-09, 124 S.Ct. 2531.
¶ 22 Here, the jury found beyond a reasonable doubt that Kolesnik's offense was committed against a law enforcement officer who was performing his duties at the time of the offense and that Kolesnik knew that the victim was a law enforcement officer. The sentencing court determined that the jury's finding of an aggravating factor was a substantial and compelling reason justifying imposition of an exceptional sentence. The jury's finding provided a constitutionally valid basis to support an exceptional sentence above the standard range. See former RCW 9.94A.535(3)(v).
¶ 23 When we review an exceptional sentence under the Sentencing Reform Act (SRA), ch. 9.94A RCW, we ask (1) are the sentencing court's reasons for an exceptional sentence supported by the record, (2) do those reasons justify a sentence outside the standard range, and (3) was the sentence clearly excessive? State v. Law, 154 Wash.2d 85, 93, 110 P.3d 717 (2005); State v. Stevens, 137 Wash.App. 460, 469, 153 P.3d 903 (2007), review denied, 162 Wash.2d 1012, 175 P.3d 1094 (2008). We apply a clearly erroneous standard to the first question, sentencing court's reasons; a de novo standard to the second, justify a sentence outside the standard range; and an abuse of discretion standard to the third, clearly excessive. Law, 154 Wash.2d at 93, 110 P.3d 717. Here, Kolesnik does not contest the fact that the record supports the sentencing court's reasons for an exceptional sentence.[10] Accordingly, we address only whether the law enforcement enhancement applies to first degree assault and whether the sentencing court abused its discretion by imposing a sentence that is clearly excessive.

A. APPLICATION OF THE AGGRAVATING FACTOR TO FIRST DEGREE ASSAULT
¶ 24 Kolesnik argues that the legislature did not intend for the law enforcement enhancement statute to apply to first degree assaults against police officers. Instead, he argues that when an assault is committed against a law enforcement officer it is necessarily a violation of the more specific and lesser crime of third degree assault. Therefore, he contends, the law requires that he be sentenced under the more specific statute. We disagree.
¶ 25 As charged here, the elements of first degree assault required the State to prove beyond a reasonable doubt that Kolesnik (1) intended to inflict great bodily harm and (2) assaulted Corporal Zimmerman with a deadly weapon or with means likely to produce great bodily harm or death. RCW 9A.36.011(1)(a). The lesser included offense of third degree assault under RCW 9A.36.031 (g) does not require proof of intent.
¶ 26 We review questions of statutory interpretation de novo. State v. Jacobs, 154 Wash.2d 596, 600, 115 P.3d 281 (2005). When construing a statute, we seek to ascertain the legislature's intent. Jacobs, 154 Wash.2d at 600, 115 P.3d 281. "`[I]f the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent.'" Jacobs, 154 Wash.2d at 600, 115 P.3d 281 (quoting Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 9-10, 43 P.3d 4 (2002)). The "plain meaning" of a statutory provision is discerned from the ordinary meaning of its language, as well as the general context of the statute. Jacobs, 154 Wash.2d at 600, 115 P.3d 281. If a statutory provision is subject to more than one reasonable interpretation, it is ambiguous. Jacobs, 154 Wash.2d at 600-01, 115 P.3d 281. If a statute is ambiguous, the rule of lenity requires us to interpret the statute in favor of the defendant. Jacobs, 154 Wash.2d at 601, 115 P.3d 281.
¶ 27 Here, there is nothing in the plain language of former RCW 9.94A.535(3)(v) that *945 precludes application of the enhancement statute to Kolesnik's charge of first degree assault under RCW 9A.36.011. RCW 9A.36.011(1) provides: "A person is guilty of assault in the first degree if he or she, with intent to inflict great bodily harm: (a) Assaults another with a firearm or any deadly weapon or by any force or means likely to produce great bodily harm or death." Former RCW 9.94A.535(3)(v) states the following circumstances constitute an aggravating factor that may support a sentence above the standard range:
The offense was committed against a law enforcement officer who was performing his or her official duties at the time of the offense, the offender knew that the victim was a law enforcement officer, and the victim's status as a law enforcement officer is not an element of the offense.
Because, here, Corporal Zimmerman's status as a law enforcement officer was not a necessary element of first degree assault, and the jury found that Zimmerman was a law enforcement officer engaged in his official duties at the time of the offense and that Kolesnik knew Zimmerman was a law enforcement officer when he assaulted him. Under the plain language of former RCW 9.94A.535(3)(v), the legislature intended to permit the sentencing court to impose an exceptional sentence on proper proof of such facts and a judicial determination that in the particular case before it these facts are substantial and compelling reasons justifying the imposition of an exceptional sentence. State v. Suleiman, 158 Wash.2d 280, 296, 143 P.3d 795 (2006).
¶ 28 Here, a jury convicted Kolesnik of first degree assault. The jury returned this verdict after it received and had an opportunity to review instructions on the lesser included offenses of second and third degree assault. The sentencing court determined, based on the jury's affirmative answer in a special interrogatory finding a statutory aggravating factor, that substantial and compelling reasons existed to impose an exceptional sentence on count I. Accordingly, the record amply justifies a sentence in excess of the standard range.

B. WHETHER THE IMPOSED SENTENCE WAS CLEARLY EXCESSIVE
¶ 29 Kolesnik argues that any sentence in excess of 184 months is clearly excessive. Again, we disagree.
¶ 30 We review whether an exceptional sentence is clearly excessive for an abuse of discretion. Law, 154 Wash.2d at 93, 110 P.3d 717. The sentencing court may exercise its discretion to determine the precise length of the exceptional sentence appropriate on a determination of substantial and compelling reasons supported by the jury's aggravating factor finding. State v. Oxborrow, 106 Wash.2d 525, 530, 723 P.2d 1123 (1986), cert. denied, 493 U.S. 942, 110 S.Ct. 344, 107 L.Ed.2d 332 (1989). A "clearly excessive" sentence is one that is clearly unreasonable, "i.e., exercised on untenable grounds or for untenable reasons, or an action that no reasonable person would have taken." State v. Ritchie, 126 Wash.2d 388, 393, 894 P.2d 1308 (1995) (quoting Oxborrow, 106 Wash.2d at 531, 723 P.2d 1123). When a sentencing court does not base its sentence on improper reasons, we will find a sentence excessive only if its length, in light of the record, "shocks the conscience." State v. Vaughn, 83 Wash.App. 669, 681, 924 P.2d 27 (1996) (quoting Ritchie, 126 Wash.2d at 396, 894 P.2d 1308), review denied, 131 Wash.2d 1018, 936 P.2d 417 (1997).
¶ 31 Here, Kolesnik wielded a deadly weapon and knowingly and violently assaulted a police officer engaged in official police duties; Zimmerman's injuries were life threatening and resulted in permanent injury. On this record, the sentencing court's sentence of 240 months, approximately twice the standard range including the deadly weapons enhancement, is neither unreasonable nor shocking. First degree assault is a class A felony. RCW 9A.36.011(2). Prior to the SRA, this crime carried a possible sentence of 20 years (240 months) to life. See State v. Fain, 94 Wash.2d 387, 401, 617 P.2d 720 (1980). A sentence of 240 months is not unconscionable or excessive.
¶ 32 The trial court did not err when it sentenced Kolesnik to an exceptional sentence of 240 months.

*946 COMMUNITY CUSTODY CONDITIONS
¶ 33 Kolesnik also argues that the sentencing court exceeded its statutory authority when it ordered him to (1) notify his community corrections officer when he has a valid prescription for a controlled substance; and (2) prohibited him from possessing or using any paraphernalia that can facilitate the ingestion, process, or sale of a controlled substance. Specifically, he argues there is nothing in RCW 9.94A.700(4)(c) that grants the sentencing court the authority to impose the two conditions. We disagree.
¶ 34 Because the issue turns on the application of the community custody provisions in the SRA, our review is de novo. State v. Pierson, 105 Wash.App. 160, 165, 18 P.3d 1154 (2001). And we review findings of fact that underlie the imposition of community custody for substantial evidence. See State v. Brockob, 159 Wash.2d 311, 343, 150 P.3d 59 (2006).
¶ 35 We note that a proper community custody condition must be authorized by the legislature because it is solely the legislature's province to fix legal punishments. See State v. Pillatos, 159 Wash.2d 459, 469, 150 P.3d 1130 (2007). If an offender is convicted of a "violent offense," a sentencing court may impose community custody under former RCW 9.94A.715(1) (2003). Here, the jury convicted Kolesnik of first degree assault, which is a serious violent offense under RCW 9.94A.030(41)(a)(v). Thus, former RCW 9.94A.715(2) authorizes the sentencing court to impose community custody conditions, including "affirmative conduct reasonably related to the circumstances of the offense, the offender's risk of reoffending, or the safety of the community." Former RCW 9.94A.715(2)(a). It also requires a sentencing court to impose the conditions listed in RCW 9.94A.700(4), and authorizes the imposition of the conditions listed in RCW 9.94A.700(5).
¶ 36 RCW 9.94A.700(4)(c) states that an "offender shall not possess or consume controlled substances except pursuant to lawfully issued prescriptions." RCW 9.94A.700(5)(e) also states that a sentencing court shall impose conditions that require the offender to "comply with any crime-related prohibitions."

A. COURT ORDERED AFFIRMATIVE CONDUCT
¶ 37 Here, the sentencing court ordered that Kolesnik "shall notify his/her community corrections officer on the next working day when a controlled substance or legend drug has been medically prescribed." Clerk's Papers (CP) at 95. Such an order requires that Kolesnik perform affirmative conduct. State v. Motter, 139 Wash.App. 797, 805, 162 P.3d 1190 (2007). This condition is authorized under former RCW 9.94A.715(2)(a) as "`affirmative conduct reasonably related to the circumstances of the offense, the offender's risk of reoffending, or the safety of the community.'" Motter, 139 Wash.App. at 805, 162 P.3d 1190 (quoting RCW 9.94A.715(2)(a)).
¶ 38 This prescription reporting condition serves two purposes. First, the rationale for this crime-related prohibition relates to Kolesnik's risk of reoffending and community safety because Kolesnik's commission of the crime was facilitated by a combination of his substance abuse and antisocial personality disorder. Second, this condition protects Kolesnik from being found in violation of his community custody conditions for taking a lawfully prescribed drugi.e., prescriptions to medicate his behavioral disorders. By reporting his prescription drug use, Kolesnik is protected from possible punishment for the lawful use of prescribed medications. Under former RCW 9.94A.715(2)(a), the trial court had the authority to impose this condition.

B. PROHIBITION ON PARAPHERNALIA POSSESSION AND USE
¶ 39 Kolesnik also challenges the order that he
shall not possess or use any paraphernalia that can be used for the ingestion or processing of controlled substances or that can be used to facilitate the sale or transfer of controlled substances including scales, pagers, police scanners, and hand held electronic scheduling and data storage devices.
CP at 95. This condition does not order affirmative conduct. Motter, 139 Wash.App. at 803-04, 162 P.3d 1190. Instead, it is a *947 "crime-related prohibition" authorized under RCW 9.94A.700(5)(e). Motter, 139 Wash. App. at 804, 162 P.3d 1190. The condition is appropriate here because it reasonably relates to the circumstances of the crime: that Kolesnik was under the influence of methamphetamine at the time he assaulted Corporal Zimmerman. But a causal link is not necessary as long as the condition relates to the circumstances of the crime. State v. Llamas-Villa, 67 Wash.App. 448, 456, 836 P.2d 239 (1992).[11]

STATEMENT OF ADDITIONAL GROUNDS

A. UNLAWFUL DETENTION
¶ 40 In his SAG, Kolesnik alleges that Corporal Zimmerman had unlawfully detained him prior to the assault. Specifically, he argues that Zimmerman did not have a reason to believe that he was engaged in any criminal conduct and could not approach him or frisk him for weapons. First, we note that Kolesnik did not challenge his initial detention below. Moreover, Zimmerman's limited detention of Kolesnik was founded on Zimmerman's articulable suspicion of criminal activity based on the report of a concerned citizen that Kolesnik was behaving erratically and that the citizen had feared injury. Zimmerman's purpose in contacting Kolesnik was to identify him and render aid if appropriate.
¶ 41 An investigative Terry[12] stop is a recognized exception to the rule that seizures are appropriate only with a warrant or probable cause. See State v. Ladson, 138 Wash.2d 343, 349, 979 P.2d 833 (1999). Such seizures are reasonable if, based on the totality of the circumstances known to the police officer at the inception of the stop, there are "`specific and articulable facts giving rise to a reasonable suspicion that the person stopped is, or is about to be, engaged in criminal activity.'" State v. Armenta, 134 Wash.2d 1, 10, 948 P.2d 1280 (1997) (quoting State v. Gleason, 70 Wash.App. 13, 17, 851 P.2d 731 (1993)).
¶ 42 Here, based on the 911 call from an identified citizen who stated he was concerned for Kolesnik's welfare, as well as his own, it was reasonable for Corporal Zimmerman to suspect that Kolesnik was engaged or about to be engaged in self-destructive or aggressive criminal activity. Kolesnik matched the description that Zimmerman received of a "suspicious person" loitering in front of the shopping center, displaying bizarre and erratic behavior. Zimmerman's suspicion that Kolesnik was on drugs and had been engaged or was about to be engaged in criminal activity was articulable and reasonably based on the report from a concerned citizen. Zimmerman had the authority to detain Kolesnik to identify him and conduct a limited investigative and welfare stop. When Kolesnik fled and assaulted Zimmerman while he was performing this lawful duty, Zimmerman's articulable suspicion ripened into probable cause for arrest.
¶ 43 Moreover, we note that "unlawful detention" is not a defense to an assault charge as Kolesnik's SAG suggests. An individual only has the right to use reasonable and proportional force to avoid an unlawful arrest when acting in an attempt to avoid injury. State v. Valentine, 132 Wash.2d 1, 21, 935 P.2d 1294 (1997). An individual may not use force against an officer making an unlawful arrest if he or she faces only a loss of freedom. Valentine, 132 Wash.2d at 21, 935 P.2d 1294. The right to be free from unreasonable seizures does not create a corresponding right to react unreasonably *948 in response to an illegal detention. State v. Mather, 28 Wash.App. 700, 703, 626 P.2d 44 (1981).
¶ 44 Here, even if Corporal Zimmerman had unlawfully detained Kolesnik, and we do not hold that he did, Kolesnik did not have the right to stab Zimmerman six times in the head and ear with a screwdriver. Zimmerman sought only to control Kolesnik and frisk him for weapons until he could verify his identification and need for assistance, if any. Kolesnik faced only a momentary loss of freedom and was not entitled to use deadly force to resist his detention at the scene.

B. MIRANDA RIGHTS
¶ 45 Kolesnik also claims that law enforcement officers failed to advise him of his Miranda rights. Statements obtained during a custodial interrogation without first advising the defendant of his constitutional rights are inadmissible. Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Custodial interrogations occur when law enforcement officers question an individual who has been "taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda, 384 U.S. at 444, 86 S.Ct. 1602. A detention becomes custodial when a suspect's freedom is limited to the degree associated with formal arrest. State v. Marshall, 47 Wash.App. 322, 324-25, 737 P.2d 265 (1987) (quoting Berkemer v. McCarty, 468 U.S. 420, 440, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)). But mere investigatory stops are not custodial interrogations requiring Miranda. Marshall, 47 Wash.App. at 325, 737 P.2d 265. A suspect may be asked to identify himself or to explain his activities without first receiving a Miranda warning. State v. Bockman, 37 Wash.App. 474, 480, 682 P.2d 925, review denied, 102 Wash.2d 1002 (1984).
¶ 46 Here, the fact that Kolesnik did not receive a Miranda warning at the scene of the crime is of no. consequence. Kolesnik's detention was an investigative stop, and Corporal Zimmerman's initial questioning was solely an attempt to identify him. Furthermore, the trial court admitted only Kolesnik's voluntary and spontaneous statements. See State v. Miner, 22 Wash.App. 480, 483, 591 P.2d 812, review denied, 92 Wash.2d 1011 (1979). We hold that any error in failing to read Kolesnik his Miranda warning was remedied by the trial court's limited admission of Kolesnik's statements.

C. REFERENCE TO PRIOR CRIMINAL HISTORY
¶ 47 Kolesnik argues that Dr. Dean's reference to her review of Kolesnik's prior criminal history tainted the jury and resulted in unfair prejudice. But Kolesnik's counsel objected to this testimony, and the trial judge instructed the jury not to consider the reference in its determination of guilt or innocence. Dean made a single reference to Kolesnik's criminal history when she testified, explaining that it was one source she reviewed in support of her diagnosis. Accordingly, the reference to Kolesnik's criminal history was relevant to his mental diagnosis.
¶ 48 We presume the jury followed the court's instruction not to improperly consider references to criminal history. State v. Johnson, 124 Wash.2d 57, 77, 873 P.2d 514 (1994). The reference did not unfairly prejudice Kolesnik and there is no reversible error.

D. INEFFECTIVE ASSISTANCE OF COUNSEL
¶ 49 Kolesnik argues that his trial counsel was ineffective because he failed to have Kolesnik evaluated by a psychiatrist, who could later testify in support of Kolesnik's diminished capacity defensethat he suffered from methamphetamine-induced psychotic disorder and other mental health issues. But Dr. Dean provided this testimony, and it is pure speculation that another psychiatrist would have added any new information. Kolesnik's trial counsel was not ineffective for deciding to use competent testimony from the State's expert to support Kolesnik's diminished capacity defense.
¶ 50 The decision whether to call a witness is ordinarily a matter of legitimate trial tactics and will not support a claim of ineffective assistance of counsel. State v. Maurice, 79 Wash.App. 544, 552, 903 P.2d 514 (1995). Dr. Dean testified that Kolesnik *949 may have experienced methamphetamine-induced psychosis at the time of the incident and that Kolesnik and his trial counsel relied on this testimony as part of their overall trial strategy in defending against the. State's claim that Kolesnik's conduct was intentional and knowing. Because the decision to rely on Dr. Dean's testimony was a strategic choice, and it is pure speculation that a second psychiatrist could have provided additional support for Kolesnik's proffered defense, the record does not support Kolesnik's claim that his counsel was ineffective on this ground.
¶ 51 We affirm.
We concur: ARMSTRONG, J., and VAN DEREN, C.J.
NOTES
[1] Kolesnik is also known as Nichael M. Kolesnik.
[2] See RAP 10.10.
[3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[4] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[5] Former RCW 9.94A.535(3)(v) provides that "[t]he offense was committed against a law enforcement officer who was performing his or her official duties at the time of the offense, the offender knew that the victim was a law enforcement officer, and the victim's status as a law enforcement officer is not an element of the offense." The legislature amended former RCW 9.94A.535 in the Laws of 2007, ch. 377, § 10, but the enhancement language applicable to this case remains unchanged.
[6] The record shows Dr. Sarah Lisenring and Dr. Margaret Dean of Western State Hospital and Kolesnik's trial counsel attended the evaluation. There is nothing in the record to show whether Kolesnik requested that he be examined by a psychiatrist or qualified expert of his own choice in accordance with RCW 10.77.070.
[7] Kolesnik had an offender score of two points at the time of sentencing.
[8] The State's brief erroneously states that the standard range topped out at 184 months with the included weapons enhancement.
[9] The two community custody conditions at issue are:

Defendant shall not possess, use or deliver drugs prohibited by the Uniform Controlled Substances Act, or any legend drugs, except by lawful prescription. The defendant shall notify his/her community corrections officer on the next working day when a controlled substance or legend drug has been medically prescribed.
Clerk's Papers (CP) at 95.
Defendant shall not possess or use any paraphernalia that can be used for the ingestion or processing of controlled substances or that can be used to facilitate the sale or transfer of controlled substances including scales, pagers, police scanners, and hand held electronic scheduling or data storage devices.
CP at 95.
[10] We note that Kolesnik does not challenge the trial court's failure to enter separate findings regarding whether the reasons justify his exceptional sentence. See RCW 9.94A.535.
[11] We note that Kolesnik's challenge to the constitutionality of community custody provision that prohibits him from possessing or using drug paraphernalia is not ripe for appeal. See State v. Zimmer, ___ Wash.App. ___, 190 P.3d 121 (2008). "The unconstitutionality of a community custody provision is not ripe for review unless the person is harmfully affected by the ... condition." (quoting State v. Autrey, 136 Wash.App. 460, 470, 150 P.3d 580 (2006)); see also Motter, 139 Wash.App. at 804, 162 P.3d 1190 (community custody conditions may only be challenged in context of an allegedly harmful application); State v. Massey, 81 Wash.App. 198, 200, 913 P.2d 424 (1996); State v. Langland, 42 Wash.App. 287, 292, 711 P.2d 1039 (1985). Here, Kolesnik has not alleged an injury as a result of the challenged prohibition. Because we can review Kolesnik's challenge only in context of an allegedly harmful application of this community custody condition, this argument is not properly before us.
[12] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).